UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENDO INTERNATIONAL PLC; ENDO HEALTH SOLUTIONS INC.; PAUL V. CAMPANELLI; BLAINE T. DAVIS; MATTHEW W. DAVIS; RAJIV KANISHKA LIYANAARCHCHIE DE SILVA; IVAN GERGEL; SUSAN HALL; DAVID P. HOLVECK; ALAN G. LEVIN; JULIE H. MCHUGH; SUKETU P. UPADHYAY; DANIEL A. RUDIO; ROGER H. KIMMEL; SHANE M. COOKE; JOHN J. DELUCCA; ARTHUR J. HIGGINS; NANCY J. HUTSON; MICHAEL HYATT; WILLIAM P. MONTAGUE; JILL D. SMITH; and WILLIAM F. SPENGLER,<br><br>Defendants. | Civ. A. No. 2:17-CV-3711-TJS<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

Preliminary Statement ..................................................................................................................1

Argument .......................................................................................................................................2

I. THE SECURITIES ACT CLAIMS SHOULD BE DISMISSED UNDER *COLORADO RIVER* ..................................................................................................2

II. PLAINTIFF ALLEGES NO FALSE OR MISLEADING STATEMENTS .......................3

    A. The Amended Complaint's "Puzzle Pleading" Defects Are Fatal ..........................3

    B. No Exchange Act Individual Defendant Made a False Statement ..........................4

    C. Plaintiff Establishes No False Statements By Any Defendant ................................4

    D. The Challenged Statements Are Inactionable as Opinions, Puffery, and Forward-Looking Statements ...................................................................................5

        1. The Statements Of Opinion Are Not Actionable .........................................5

        2. The Statements Of Puffery Are Not Actionable ..........................................6

        3. The Forward-Looking Statements Are Not Actionable ..............................7

III. PLAINTIFF DOES NOT ESTABLISH A "STRONG INFERENCE" OF SCIENTER ..........................................................................................................................7

Conclusion ...................................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Aetna, Inc. Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010)..................................................................................................6

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
   413 F. Supp. 2d 378 (E.D. Pa. 2005) .....................................................................................9

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004)...............................................................................................4, 5

*In re CDNOW, Inc. Sec. Litig.*,
   138 F. Supp. 2d 624 (E.D. Pa. 2001) .....................................................................................5

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)...................................................................................................6

*In re: Enzymotec Sec. Litig.*,
   No. 14-5556 (JLL) (MAH), 2015 WL 8784065 (D.N.J. Dec. 15, 2015)..............................10

*Fain v. USA Techs., Inc.*,
   707 F. App'x 91 (3d Cir. 2017) .............................................................................................8

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*,
   615 F. Supp. 2d 218 (S.D.N.Y. 2009)....................................................................................7

*In re Genworth Fin. Inc. Sec. Litig.*,
   103 F. Supp. 3d 759 (E.D. Va. 2015) ..................................................................................10

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016)................................................................................6, 7

*In re Heartland Payment Sys., Inc. Sec. Litig.*,
   No. Civ. 09-1043, 2009 WL 4798148 (D.N.J. Dec. 7, 2009)................................................9

*Martin v. Quartermain*,
   --- Fed. App'x ----, 2018 WL 2024719 (2d Cir. May 1, 2018)..............................................6

*Mouchantaf v. Int'l Modeling & Talent Ass'n*,
   368 F. Supp. 2d 303 (S.D.N.Y. 2005)....................................................................................3

*In re NutriSystem, Inc. Sec. Litig.*,
   653 F. Supp. 2d 563 (E.D. Pa. 2009) .....................................................................................9

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)............................................................................5, 8

*In re Pall Corp.*,
    No. 07-CV-3359, 2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009) .........................10

*In re PDI Sec. Litig.*,
    No. 02-Civ-0211 (GEB), 2006 WL 3350461 (D.N.J. Nov. 16, 2016) ....................8

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)...................................................................8

*Pub. Emps.' Ret. Sys. of Miss. v. Endo Int'l PLC*,
    No. 2017-02081-MJ (Pa. Ct. Com. Pl. Apr. 9, 2018) .................................................2

*In re PXRE Grp., Ltd., Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)..................................................................10

*In re Radian Sec. Litig.*,
    612 F. Supp. 2d 594 (E.D. Pa. 2009) ....................................................................8

*In re Rent-Way Sec. Litig.*,
    209 F. Supp. 2d 493 (W.D. Pa. 2002)..................................................................10

*Robinson v. Ruiz*,
    772 F. Supp. 212 (D. Del. 1991)............................................................................2

*In re Stonepath Grp., Inc. Sec. Litig.*,
    No. Civ.A. 04-4515, 2006 WL 890767 (E.D. Pa. Apr. 3, 2006) ............................9

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)....................................................................9

*Winer Family Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007)...................................................................................8

**Preliminary Statement**

Plaintiff's opposition brief thoroughly underscores the Amended Complaint's fatal flaws.

*First*, Plaintiff all but ignores the argument that its Securities Act claims should be dismissed under *Colorado River* as duplicative of the previously-filed Securities Act claims in the *MissPERS* case. Its halfhearted effort to distinguish the two cases on the grounds that they challenge different statements in the same offering documents only highlights that Plaintiff is attempting to split one claim by the same plaintiff class into two cases in two courts. This is precisely the type of "piecemeal litigation" that *Colorado River* disfavors.

*Second*, Plaintiff still fails to adequately allege that any statement was false at the time it was made. It denies that the Amended Complaint constitutes impermissible "puzzle pleading" but fails to unpack or decipher its multi-layered cross-references. Plaintiff does not even try to explain how any statement by any of the Exchange Act Individual Defendants was false, effectively conceding that the individuals should be dismissed. Plaintiff devotes over 20 pages to arguing that it has pled "contemporaneous" facts but does not cite a single fact demonstrating falsity. And Plaintiff's arguments about forward-looking statements, opinions, and puffery at best show a misunderstanding of the law.

*Third*, Plaintiff still points to no facts establishing scienter as to *any* Defendant. Instead, it relies on generic and oft-rejected arguments based on Defendants' theoretical "access" to information contrary to public statements, "core operations," and the "duration" of the alleged fraud, none of which raise *any* inference of scienter.

Plaintiff has utterly failed to state a claim. The Amended Complaint should be dismissed.

**Argument**

I. **THE SECURITIES ACT CLAIMS SHOULD BE DISMISSED UNDER *COLORADO RIVER***

Defendants' opening brief established that Plaintiff's Securities Act claims should be dismissed under *Colorado River* because the *MissPERS* case—which is now in discovery—alleges misstatements in the exact same offering documents on behalf of the exact same plaintiff class. (Mot. at 10-13.)[1] Plaintiff has almost nothing to say in response. It waits until page 42 of its brief to address this issue, and then offers *no precedent* in which any court has allowed a single class of plaintiffs to split a Securities Act claim in this way. Its "argument" amounts to an unsupported incantation that the two cases "are not sufficiently similar." (Opp. at 43.)

*Colorado River* "does not" require that two proceedings "be identical, but rather substantially similar." *Robinson v. Ruiz*, 772 F. Supp. 212, 214 (D. Del. 1991). The only supposed difference cited here is that this case challenges statements in the offering documents concerning "the abuse-deterrent properties of Reformulated Opana ER" but *MissPERS* challenges statements concerning "adverse trends in sales" and the "unsustainable business practice of 'trade loading'" in Endo's "generic division." (Opp. at 44.) What facts could more clearly evidence an attempt by a plaintiff class inappropriately to split a cause of action—the same class pursuing liability based on different alleged misstatements in the same offering documents (Endo's June 2015 stock offering documents) for the same damages, based on a stock price decline supposedly resulting from those misstatements? (¶ 265; Mot. Ex. 1 ¶¶ 86-97, Ex. 2

---

[1] On April 9, 2018, the Chester County court denied Defendants' preliminary objections and the case is proceeding. *Pub. Emps.' Ret. Sys. of Miss. v. Endo Int'l PLC*, No. 2017-02081-MJ (Pa. Ct. Com. Pl. Apr. 9, 2018) (order overruling preliminary objection to amended class action complaint).

¶¶ 99-110.) There is no reason this claim should not be brought in the same case. This is exactly the sort of "piecemeal litigation" that *Colorado River* forbids. (Mot. at 12 (citing cases).)

Plaintiff mentions in a footnote (Opp. at 46 n.26)—but does not actually address—the duplicative discovery that would result from such piecemeal litigation, as the same defendants would need to provide the same document discovery and sit for depositions to answer the same questions about the offering process and offering documents twice. This makes no sense. *See Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005) ("the avoidance of piecemeal or purely duplicative litigation and the concomitant waste of judicial resources" was "[t]he predominant concern expressed in *Colorado River*"). The Securities Act claims in this case should be dismissed in favor of those already proceeding in *MissPERS*.

## II.     PLAINTIFF ALLEGES NO FALSE OR MISLEADING STATEMENTS

### A.     The Amended Complaint's "Puzzle Pleading" Defects Are Fatal

Defendants' opening brief establishes that the Amended Complaint—with its 394 paragraphs of cross-references stacked on other cross-references—is precisely the sort of "puzzle pleading" that courts roundly reject. (Mot. at 15-17.) Plaintiff again has almost nothing to say.

Plaintiff tries to skirt the issue by asserting that Defendants "had no difficulty understanding" their allegations. (Opp. at 47.) This rhetorical gambit fails. Plaintiff's opposition brief for the first time groups the dozens of statements it challenges into *three* categories: the abuse-deterrent properties of reformulated Opana ER, trends in intravenous abuse, and comparisons to OxyContin. (*Id*. at 11, 15, 17.) But this is not remotely apparent from the Amended Complaint, which asserts *six* different categories of alleged "false[] reassur[ances]" over 25 paragraphs (¶¶ 114-36) and then groups more than 100 paragraphs of alleged misstatements by *year*, not by subject matter. (¶¶ 157-263.) Plaintiff's own assertion that Defendants "[f]undamentally misunderstand[] Plaintiff's allegations" (Opp. at 35) only

3

underscores this point, as does Plaintiff's unexplained "Exhibit A," which does not cite to any allegation in the Amended Complaint.

Plaintiff fails to cite a single case finding sufficient a complaint that—like the Amended Complaint here—uses multiple layers of cross-references to try to plead a misstatement. Defendants have cited ample case law rejecting similar complaints. (Mot. at 15-17 (citing cases).) The Amended Complaint should suffer the same fate.

### B.   No Exchange Act Individual Defendant Made a False Statement

Plaintiff does not even try to argue that any of the Exchange Act Individual Defendants' statements was false. Plaintiff's brief mentions them only once by name—in a footnote that offers no such explanation. (Opp. at 32 n.19.) There is no basis whatsoever to maintain a claim against these individuals. They should be dismissed from the case for this reason alone.

### C.   Plaintiff Establishes No False Statements By Any Defendant

The Third Circuit has "long rejected attempts to plead fraud by hindsight." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004). Plaintiff asserts over and over again that the allegations of misstatements are based on "contemporaneous" data. (*See* Opp. at 2, 10-13, 14 n.9, 17; *see also id.* at 18 ("data pre-dating the Class Period"); *id.* at 19 ("Endo . . . receive[d] and rel[ied] upon this data during the Class Period"); *id.* at 23 (data received "prior to and during the Class Period").) But Plaintiff does not actually identify or quote *any* specific data showing that a statement was false *at the time it was made*.

Plaintiff does not explain how charts prepared in *2016 and 2017* (Mot. at 19-20) can show that statements as early as *2012* were false. The bare assertion that these charts are based on unspecified "data" in 2012 and 2013 is misguided. The paragraphs of the Amended Complaint that Plaintiff cites for this argument (Opp. at 19 (citing ¶¶ 88, 99)) simply refer to unspecified "reports" that Endo supposedly received—but no facts establish that those reports

4

contain the same "data" that is reflected in the 2016 and 2017 charts.  In any case, vague references to "data" and "reports" do not establish a false statement under the PSLRA and Third Circuit law, which requires plaintiffs to "identify who authored the alleged report, when it was authored, who reviewed the report, and what data its conclusions were based upon." *Chubb*, 394 F.3d at 147.

Similarly, Plaintiff continues to rely on "studies." (Opp. at 12.)  But Defendants' opening brief established that the Amended Complaint alleges virtually no facts about these studies—not the authors, methodologies, data, or conclusions—as expressly required in *Chubb*.  (Mot. at 20-21.)  Plaintiff's *only* response is in a footnote that also does not provide this information, but instead makes the irrelevant argument that the "studies" were contemporaneous.  (Opp. at 14 n.9.)  This misses the point.  Not only do that footnote and the Amended Complaint fail to establish when these studies were created, but, as importantly, they also fail to allege anything meaningful about their contents.  This also requires dismissal.  (Mot. at 21 (citing cases).)[2]

### D. The Challenged Statements Are Inactionable as Opinions, Puffery, and Forward-Looking Statements

#### 1. The Statements Of Opinion Are Not Actionable

Plaintiff argues that Defendants' opinions and subjective interpretations of data are actionable because they "contained embedded factual representations *or* Defendants did not honestly hold the purported opinion expressed." (Opp. at 28 (emphasis added).)  That is not the

---

[2] In any case, Plaintiff merely contends that the failure to disclose the "studies" in 2013 was problematic given that the FDA noted a "troubling possibility" that reformulated Opana ER had higher rates of intravenous abuse. (Opp. at 13 (citing ¶ 111).)  This salvages no claim.  There is no connection between the FDA's concern and the "studies" cited in the Amended Complaint. (*See* ¶¶ 109-12.)  Plaintiff also cites no law requiring companies to disclose a mere "possibility." *See Oran v. Stafford*, 226 F.3d 275, 283 (3d Cir. 2000) (statements regarding medication were not misleading where FDA stated potentially problematic data was not conclusive); *In re CDNOW, Inc. Sec. Litig.*, 138 F. Supp. 2d 624, 635-36 (E.D. Pa. 2001) ("speculative" information immaterial as a matter of law).

5

law. To be actionable, statements of opinion must be *both* objectively false (*e.g.*, incorrect) *and* subjectively false (*e.g.*, the speaker did not believe them). (Mot. at 22-23 (citing cases).)

Plaintiff alleges neither. No statements (including any so-called "embedded factual representations") were objectively false for the reasons above. And Plaintiff does not allege a single fact about any Defendant that could possibly show their subjective belief. Such a showing is especially difficult where, as here, claims are based on differing interpretations of complex scientific data. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) (disagreement within a company regarding data interpretation "is not sufficient to show defendants' interpretation lacked a reasonable basis"); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 598 (S.D.N.Y. 2016) ("That the FDA . . . ultimately disagreed with defendants' interpretation of the data does not render their subjective assessments false or misleading"). Plaintiff's theory that the opinions are actionable as omissions (Opp. at 27-28) is also without support because an opinion is not misleading simply if, as Plaintiff argues, a defendant "knows, but fails to disclose, some fact cutting the other way" because "reasonable investors understand that opinions sometimes rest on a weighing of competing facts[.]" *Martin v. Quartermain*, --- Fed. App'x ----, 2018 WL 2024719, at *3 (2d Cir. May 1, 2018) (quotation omitted).

### 2. The Statements Of Puffery Are Not Actionable

Plaintiff argues that the Court cannot grant the motion to dismiss based on puffery because "Defendants do not dispute that the subject matter of the alleged misstatements is material." (Opp. at 24.) Plaintiff again misunderstands the law. As the Third Circuit has explained, "[m]aterial representations must be contrasted with statements of subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism" constituting puffery. *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010) (citation omitted). Plaintiff's attempt to turn general optimistic statements into material misstatements

6

would void the law on puffery. In any case, Plaintiff's argument assumes that it has pled facts establishing that these statements were false—but, as explained above, it has not.

### 3. The Forward-Looking Statements Are Not Actionable

Plaintiff argues that statements that Endo "will hopefully" and "expect[s]" to receive FDA approval for abuse-deterrent labeling are not forward-looking because they are statements of existing fact. (Opp. at 20-21.) This is wrong. The PSLRA safe-harbor expressly immunizes predictions of the future, which these statements plainly were. Rejecting a similar argument, one court explained:

> [T]o the extent the [complaint] challenges [defendant's] statement that QRX was "confident that [the] refiled NDA [would] confirm the validity of the data defining the product's respiratory safety advantages," that statement is shielded by the PSLRA safe harbor. It is forward-looking and the [complaint] does not adequately allege that it was made with actual knowledge . . . that [it was] false or misleading.

*Gillis*, 197 F. Supp. 3d at 599 (citations omitted) (fourth, fifth, and seventh alterations original). The same conclusion is warranted here.[3]

## III. PLAINTIFF DOES NOT ESTABLISH A "STRONG INFERENCE" OF SCIENTER

Plaintiff's opposition brief all but concedes that it has *no facts* demonstrating scienter. It does not identify a single fact showing that any Defendant—and certainly none of the Exchange Act Individual Defendants—intentionally misled investors. There are none of the hallmarks of a viable scienter allegation—for instance, no facts showing that any Defendant *actually* was aware of facts contrary to public statements, no facts showing that any Defendant willfully ignored

---

[3] Plaintiff asserts that the accompanying cautionary language was insufficiently specific. (Opp. at 22.) This is mistaken. The cautionary statements directly addressed Plaintiff's underlying allegation that Defendants' statements to the market exaggerated the likelihood of securing FDA approval. *See Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 231-33 (S.D.N.Y. 2009) (holding disclosures about the uncertainty of FDA approvals satisfied safe harbor despite absence of specific disclosures about risks to approval).

facts available to him or her, and no insider stock sales that could provide a motive. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 332 (3d Cir. 2007) ("[Plaintiff] failed to adequately plead scienter by failing to link the declarant of the challenged statement with facts that might contradict his statement."); *In re PDI Sec. Litig.*, No. 02-Civ-0211 (GEB), 2006 WL 3350461, at *16 (D.N.J. Nov. 16, 2016) ("the fact that Defendants did not sell a single share of their own stock during the Class Period effaces Plaintiffs' assertions about Defendants' motives.").

Unable to cite any facts, Plaintiff's opposition brief tries to base scienter on a series of roundly rejected generic scienter theories. It begins by asserting that scienter can be established by Defendants' theoretical "access" to data contrary to public statements. (Opp. at 32-35.) This fails. It is not enough to show that Defendants potentially had access to information; a plaintiff must show *actual* access to the specific information rendering the alleged misstatements false or misleading. *See Oran*, 226 F.3d at 290 ("Plaintiffs did not aver which officer-defendants, if any, were aware of the Mayo data prior to its public release. Nor have they made any allegations regarding *individual knowledge* or recklessness with respect to the European data. Therefore, plaintiffs cannot meet the heightened pleading requirements" regarding scienter) (emphasis added); *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 608 (E.D. Pa. 2009) ("Bare allegations that the defendants 'knew' or 'must have known' that statements were fraudulent are insufficient.").[4] In any event, this argument defies common sense. There is no reason to believe that—and Plaintiff certainly alleges no facts explaining why—a financial executive, for example, would

---

[4] Actual access must be shown, otherwise scienter could be imputed to every executive at every company simply by virtue of job title. That is not the law. *See Fain v. USA Techs., Inc.*, 707 F. App'x 91, 96 (3d Cir. 2017) ("We have noted before the difficulty of establishing a 'they-must-have-known' type inference such as this. That Defendants were in top positions . . . alone, is not enough.") (citation omitted); *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("accusations founded on nothing more than a defendant's corporate position are entitled to no weight").

have access to detailed scientific data.  Nor is there any basis to conclude that Defendants employed by Endo for a fraction of the alleged class period would have access to information outside their employment period (Mot. at 29 n.17)—and Plaintiff makes no effort to explain who had access to what information or when.

Plaintiff next trots out the "core operations" theory of scienter, which also fails. (Opp. at 36-38.)  As an initial matter, this theory's validity is, at best, uncertain.  *See In re Heartland Payment Sys., Inc. Sec. Litig.*, No. Civ. 09-1043, 2009 WL 4798148, at *7 (D.N.J. Dec. 7, 2009) (noting that "core business doctrine" does not "establish a rule of law"); *In re Stonepath Grp., Inc. Sec. Litig.*, No. Civ.A. 04-4515, 2006 WL 890767, at *12 (E.D. Pa. Apr. 3, 2006) (given Third Circuit precedent, "caution is not simply prudent, it is required" when imputing knowledge of core activities).  To the extent the theory may have validity, it allows plaintiffs—in limited circumstances—to plead scienter through "the combination of an officer's position within the company and fraud allegations related to the corporation's core business." *In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 575 (E.D. Pa. 2009).  But it still requires facts. "[C]ore operations" allegations fail where, as here, plaintiffs do not plead facts establishing that defendants, by virtue of their positions, were "consciously involved" in the fraud or that the product at issue was responsible for "nearly all of a company's business." *See Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (sales representing 16% of company's business not sufficiently "core"); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 403 (E.D. Pa. 2005) ("core operations" inapplicable where plaintiffs did not "meet their burden of alleging facts that the individual defendants' positions were such that they were consciously involved in a scheme to defraud investors").  None of these allegations are—or could be—made here as to any defendant.

In a last-gasp effort to establish scienter, Plaintiff argues that the duration of the alleged fraud somehow supports scienter.  (Opp. at 40.)  This is similarly unavailing.  That Plaintiff has tried to allege a long class period does not, without a great deal more, raise any inference of scienter—it takes *more* facts, not fewer, to establish a lengthy fraud.  *See In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 545 (S.D.N.Y. 2009) ("[I]t is well established that the size of the fraud alone does not create an inference of scienter.") (quotation omitted).  Even the cases Plaintiff cites for this proposition do not base a finding of scienter on the length of the class period but on the factual bases for concluding that a fraud occurred in the first place.  (Opp. at 40 (citing *In re: Enzymotec Sec. Litig.*, No. 14-5556 (JLL) (MAH), 2015 WL 8784065, at *18 (D.N.J. Dec. 15, 2015) (finding "[m]ost compelling" scienter allegations to be "unusual" stock sales "for significant personal financial gain"); *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 785 (E.D. Va. 2015) (defendants had "intimate" and "personal" involvement with the alleged fraud); *In re Pall Corp.*, No. 07-CV-3359, 2009 WL 3111777, at *8 (E.D.N.Y. Sept. 21, 2009) (confidential informants detailed defendants' involvement in the alleged fraud); *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 516 (W.D. Pa. 2002) (defendants "knowingly took advantage" of lack of controls and "directed accounting personnel to make false accounting entries" ).)  There is no such factual basis here.

## Conclusion

For the reasons set forth above and in Defendants' brief in support of their motion to dismiss, this Court should dismiss the Amended Complaint, without leave to amend.

Respectfully submitted,

LATHAM & WATKINS LLP

 s/ Jeff G. Hammel
Miles N. Ruthberg (admitted *pro hac vice*)
James E. Brandt (admitted *pro hac vice*)
Jeff G. Hammel (admitted *pro hac vice*)
Thomas J. Giblin (admitted *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
miles.ruthberg@lw.com
james.brandt@lw.com
jeff.hammel@lw.com
thomas.giblin@lw.com


J. Gordon Cooney, Jr. (No. 42636)
Laura Hughes McNally (No. 310658)
MORGAN, LEWIS & BOCKIUS  LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
gordon.cooney@morganlewis.com
laura.mcnally@morganlewis.com


*Attorneys for Defendants*

11